## EL PUEBLO, DEMANDANTE Y APELADO, *v.* MUÑOZ, ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Humacao en causa por acometimiento y agresión grave.

No. 1709.—Resuelto en mayo 31, 1921.

EVIDENCIA—PREGUNTAS SOBRE HECHOS COLATERALES—CREDIBILIDAD DEL TESTIGO.— Mediante repreguntas, el acusado tiene derecho a poner de manifiesto el prejuicio de un testigo de cargo a fin de suministrar al jurado o a la corte datos que permitan deducir el grado de credibilidad del testigo. Por ejemplo, es admisible en evidencia que el acusado durante el reexamen pregunte a un testigo de cargo en cuanto al motivo que le impulsó a ir a donde el juez a decirle que estaba presente al cometerse el delito.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. F. Cervoni Gely.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

El apelante fué declarado culpable por un delito de acometimiento y agresión grave y alega como error, primero, la oposición hecha por la corte a la pregunta formulada por la defensa en cuanto al motivo que impulsó a un testigo a ir donde el juez a decirle que estaba presente al cometerse el delito; y segundo, el prejuicio por parte de la corte sentenciadora al dictar sentencia.

El incidente en el cual descansa el primer señalamiento de error aparece del siguiente extracto que tomamos de los autos, a saber:

"Juan Gómez.—Declara que al medio día iba para la hacienda Barriola y vió cuando el acusado le tiró dos veces con el cuchillo a Santiago Iglesias que se fué corriendo y lo subieron para la fábrica.

"Repreguntado por la defensa dice que él, es testigo en este proceso porque él mismo en persona fué donde el juez a decirle que había visto el caso. Y cuando la defensa preguntó al testigo sobre el motivo que le impulsó a decirle al juez que había visto el caso, la corte se opuso a la pregunta y la defensa tomó excepción."

El objeto y fin de la pregunta excluída por el juez sen-

tenciador aparece razonablemente de su faz y la negativa
a permitir cualquier investigación en este sentido equivale
más bien a un abuso que no al ejercicio de la discreción ju-
dicial.

"Por lo general no se permitirá hacer una pregunta en el examen
de repreguntas que sea claramente impertinente, pero un testigo puede
ser repreguntado respecto a cuestiones impertinentes al punto en
controversia (*issue*) para desautorizar su declaración por medio de
lo que él mismo pueda decir en contestación, aunque no con el fin de
contradecirle con otro testigo. Esto es así prescindiendo de la regla
que prevalece en cuanto al alcance de las repreguntas acerca de cues-
tiones que son precisamente esenciales al punto en controversia. Si
bien respecto a estas cuestiones las repreguntas no pueden extralimi-
tarse del interrogatorio directo, debe, sin embargo, permitirse la más
amplia investigación en las cuestiones colaterales, hayan o no sido
objeto de interrogatorio directo. En realidad esta clase de investiga-
ción es uno de los fines más importantes del interrogatorio de repre-
guntas por ser uno de los principales agentes para el descubrimiento
de la verdad en investigaciones judiciales. Por medio de ella puede
hacerse ver la relación del testigo con la causa o las partes, su inclina-
ción o interés, de tener alguno, su disposición hacia la verdad y vera-
cidad, y en verdad cualquier hecho colateral que pueda relacionarse
con su veracidad e imparcialidad. Puede hacerse cualquier pregunta
que razonablemente tienda a explicar, contradecir o desautorizar cual-
quier declaración dada por él, o para establecer su certeza, memoria,
veracidad o credibilidad. Las repreguntas con el objeto de tachar
directamente la declaración del testigo no constituyen el límite del
derecho. Aparte de la regla que prevalezca en una jurisdicción en
cuanto al alcance de las repreguntas sobre cuestiones esenciales, siem-
pre se permite al repreguntar establecer la base para tachar al tes-
tigo mediante prueba de manifestaciones contradictorias hechas ante-
riormente, y cuando el testigo admite que existe incongruencia entre
su declaración y sus manifestaciones hechas en otras ocasiones, que
se le examine en cuanto a los motivos que originan la incongruen-
cia." 28 R. C. L., sec. 197.

"Las investigaciones en el estado de ánimo o disposición del tes-
tigo para ocultar o desvirtuar la verdad no serán excluídas por ser
colaterales. La predisposición por parte de un testigo hacia una
parte en la acción, es prueba de parcialidad que puede afectar a la
credibilidad y el derecho a poner de manifiesto el hecho mediante

repreguntas no debe a menudo negarse sin que se cometa abuso de discreción que sería perjudicial al litigante. En tales casos el límite· debido para el ejercicio de discreción por la corte sentenciadora consiste en circunscribir las repreguntas al punto de que se revelen solamente aquellos hechos de donde aparezca la hostilidad, y rechazar todo aquello que sólo sería pertinente para justificar la hostilidad por parte del testigo, pues es la existencia del estado de ánimo lo que es esencial y no lo correcto o incorrecto de la transacción que la ocasiona.'' *Id.* 612, sec. 201.

''Un testigo puede ser tachado mostrándose su parcialidad, probándose su parentesco cercano, simpatías, hostilidad o prejuicio, y esto puede hacerse por medio de su propia declaración, o por otra prueba. Es pertinente mostrar el estado de ánimo de un testigo cuando se le llama a declarar, con el fin de suministrar al jurado todos los hechos que son necesarios para una completa y razonable consideración de su declaración y para que pueda determinar el grado de credibilidad que ha de dársele. Por ejemplo, es procedente en las repreguntas preguntar a un niño en cuanto al estado de ánimo de sus padres hacia el acusado, si existe malquerencia y tal hecho es conocido del niño, siendo esa prueba admisible y pertinente por afectar a la credibilidad del testigo.'' *Idem* 615, sec. 204.

Véase también a ''Wharton sobre Evidencia Penal,'' tomo I, página 988, secciones 476, y siguientes.

La exposición en forma narrativa de todas las demás declaraciones aportadas al juicio es tan breve, que sería conveniente transcribirla íntegramente. Hacemos cita de los autos.

''Santiago Iglesias.—Este testigo declara que denunció a Francisco Muñoz porque le acometió con un cuchillo en San Lorenzo, en ocasión en que había allí un movimiento contra el comercio y la carne, con el objeto de abaratar el precio de la vida.

''Que mandó a comprar carne y le dijeron que si la compraba se la botaban. Entonces fué el testigo personalmente a comprarla y en un grupo en que estaba el acusado le dijo al testigo: 'Con este hay que acabar.' Al día siguiente, yendo el testigo para la 'Colectiva,' el acusado, que estaba debajo de un árbol, al pasar el testigo sacó un cuchillo y se le fué encima; el testigo corrió y el acusado lo persiguió, pero Hilario García se le fué detrás le quitó el cuchillo y salió herido en una mano. La defensa se opone a que el testigo

declare lo que le pasó a Hilario García. La corte sostiene la declaración, la defensa tomó excepción.

"Sigue declarando el testigo que eso ocurrió el 3 de julio de 1920, en San Lorenzo, estando presentes Juan Gómez, Hilario García y Belén Claudio.

"A repreguntas de la defensa, declara: que toda la gente en San Lorenzo estaba en contra de él, pero que sin embargo impidieron que el acusado lo hiriera.

"Hilario García.—Declara que el 3 de julio estaba Francisco Muñoz recostado en un palo de jobos, cuando al pasar Santiago Iglesias se le fué detrás con un cuchillo en la mano. Otro tabaquero que venía de abajo lo empuñó y el acusado le dijo: 'Déjame *dir* que voy a darle a este.' El acusado se le *safó* al individuo, se le. arremangó detrás a Iglesias, pero el testigo estaba allí y le quitó el cuchillo.

"Repreguntado, por la defensa dice: que le quitó el cuchillo al acusado pero que no entregó el cuchillo a la policía ni sabe a donde fué a parar dicha arma.

"Belén Claudio.—Declara que iba para la fábrica con don Santiago Iglesias, cuando el acusado Muñoz llamó a Iglesias e Iglesias salió corriendo sin que el acusado le hiciera nada. Que el acusado no tenía ningún cuchillo y que si lo hubiese tenido, la testigo estaba en condiciones de haberlo visto. También declara que el acusado no amenazó a Iglesias.

      ❋      ❋      ❋      ❋      ❋      ❋      ❋

"Hilario García.—El juez de su propia iniciativa vuelve a llamar al testigo Hilario García, quien se ratificó en su declaración anterior, declarando además, a preguntas del juez, que la señora Belén Claudio iba con Santiago Iglesias. Entonces el juez le hizo la siguiente pregunta: ¿De manera que esta señora debió haber visto el acto de sacar el cuchillo? A lo que el testigo contesta: No, porque ella cogió para arriba.

"A repreguntas de la defensa dice que el testigo es un hombre inútil que iba a pasear al matadero.

"Santiago Iglesias.—Este testigo es llamado a iniciativa del propio señor juez, para preguntarle si Belén Claudio iba con él a lo cual el testigo contesta que efectivamente iba acompañado de la señora y que ésta le gritaba: huye, huye Santiago, que te dan.

"Repreguntado por la defensa que por qué no había declarado eso mismo cuando fué llamado a declarar por primera vez, manifestó

que porque no convenía o no se había acordado. Y vuelto a preguntar que por qué había olvidado una cosa tan importante, contestó: "como se olvidan muchas cosas licenciado."

"Isidoro Vázquez.—A preguntas del fiscal declara que al entrar al taller el día de autos no vió que pasara nada.

"Con este testigo terminó la prueba de cargo.

"Prueba de descargo:

"Ignacio Rivera.—Declara que el día de autos el testigo iba para la fábrica y se paró en un grupo que había de diez o doce personas, entre las cuales estaba el acusado Muñoz, quien le dijo a Santiago Iglesias que pasaba por allí: Oiga, Santiago, hágame el favor que tengo que hablar con usted: a lo cual Iglesias contestó: no puedo ahora. Y en el mismo grupo oyó el testigo una voz que dijo: 'Huye Santiago, que te dan,' pero no pudo averiguar la persona que dijo esto. Que Santiago salió corriendo y todo el mundo se echó a reir por la broma. Que el acusado se quedó quieto donde estaba y no es cierto que persiguiera a Santiago. Que si lo hubiera perseguido el testigo lo habría visto.

"El fiscal se limita a representar su oficio. Dice que es tabaquero.

"Enrique Vázquez.—Declara que el día de autos estaba fumando frente a la fábrica con un grupo que en el estaba el acusado Muñoz. Que al llegar Iglesias el acusado le dijo: Oye, Santiago, tengo que hablar contigo. A lo que Santiago contestó: que no tenía que oir nada. Entonces una voz dijo: corre, Santiago, que te dan. Y que Iglesias salió corriendo. Que no hubo allí cuchillo ni persecución del acusado a Iglesias.

"Repreguntado por el juez la ratifica la declaración y dice que la voz 'corre que te dan,' era una broma.

Al momento de dictar sentencia el juez de distrito sin referirse a ningún conflicto en la prueba respecto a si el acusado meramente habló a Iglesias o le acometió, dijo en parte lo siguiente:

"La corte ha oído cuidadosamente la prueba, le ha puesto toda su atención en escuchar la prueba en este caso, y se ha dado cuenta que esto es verdaderamente un hecho insólito en Puerto Rico, y que está tomando carta de naturaleza en Puerto Rico.

"Ya tenemos la costumbre que cuando hay un movimiento de

huelga en el país, los que están en huelga se creen que tienen derecho más alto que los demás, y están equivocados. Esta corte ha mantenido siempre el derecho que tienen los trabajadores a declararse en huelga; pero ese derecho de los trabajadores, termina donde empieza el derecho de todos los demás individuos de la comunidad que no quieren declararse en huelga. Tal parece que estos individuos que se declaran en huelga en Puerto Rico entienden que deben asociárseles porque de lo contrario el que no lo haga así, debe ser amenazado y debe ser objeto de la acritud de ellos. Y esta es una cuestión que no puede la corte tolerar. El acusado tiene perfecto derecho a declararse en huelga, y los otros, a declararse en contra de la huelga. Pero esto de tratar de crear el terror en Puerto Rico porque haya personas que no se adhieran a esos movimientos huelguistas, no puede consentirse. Esto es ya una anarquía en Puerto Rico, de menor cuantía, que no causa mayores daños al país, por su densidad de población y por lo exiguo de su territorio. Este acusado es un anarquista y la corte lo declara culpable.

"Se dictará sentencia en este caso, el lunes a las nueve de la mañana."

Para los fines de esta opinión puede admitirse que ni esta circunstancia ni otros particulares de que se queja el apelante en relación con el segundo señalamiento de error, harían necesaria la revocación de la sentencia si no hubiera cometido error la corte sentenciadora en su pronta negativa a permitir que el testigo Gómez fuera repreguntado en cuanto al motivo que le impulsó a ir donde el juez a decirle que estaba presente al cometerse el delito. Al propio tiempo, de interpretarse el lenguaje al pie de la letra ciertamente da lugar a cierta duda respecto a si la corte inferior en verdad estaba considerando primero la cuestión de la culpabilidad o inocencia con relación al delito imputado en la denuncia a diferencia del carácter reprochable y actitud mental del acusado como anarquista.

Pero sea esto como fuere, no podemos decir que el acusado no fué perjudicado por el error alegado en el primer señalamiento, y por esta razón, robustecida como está por

otras circunstancias a que hemos hecho referencia, la sentencia apelada debe ser revocada.

> *Revocada la sentencia apelada y ordenado un nuevo juicio.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.